13 F.3d 1541
 62 USLW 2525
 PANAMA CITY MEDICAL DIAGNOSTIC LTD., Dr. Frank Syfrett, and
Dr. Steve Taylor, Plaintiffs-Appellees,
Am-Med Associates, A Florida General Partnership, Winter
Park MRI Partners, Ltd., Medi-Tek Winter Park, Inc., MRI of
Wellington, Ltd., Meditek-Wellington, Inc., Meditek-Palm
Beach Gardens, Inc., Clay Medco, d/b/a Orange Park
Diagnostic Center, Prime Care Diagnostic, Inc., d/b/a Prime
Care Diagnostic Center, Magnedocs, Ltd., A Florida Limited
Partnership, by and through its general partner, Magnadoc,
Inc., a Florida Corporation, Magwest Ltd., a Florida Limited
Partnership, by and through its general partner, Westdoc,
Inc., a Florida Corporation, Kendall Therapy Center, Ltd.,
d/b/a Kendall Therapy Center, a Florida Limited Partnership,
by and through its general partner, CHC of South Miami,
Inc., a Florida Corporation, Medical Park Diagnostic
Multicenter, d/b/a Medical Park, a Florida Limited
Partnership, by and through its general partner, CHC of
South Miami, Inc., a Florida Corporation, Kendall Medical
Enterprises, Inc., d/b/a Kendall Diagnostic Center, a
Florida Corporation, Health Images, Inc., Robert Kagan,
M.D., Magnetic Imaging Systems I, Ltd., a Florida Limited
Partnership, by and through its general partner, Nuclear
Magnetic Imaging, Inc., a Florida Corporation, Intervenors-Appellees,
v.
Robert B. WILLIAMS, in official capacity as Sec. of Florida
Dept. of HRS, George Stuart, in his official capacity as
Sec. of Florida Dept. of Professional Reg., Board of
Medicine, Board of Osteopathic Medical Examiners, Board of
Chiropractic, et al., Defendants-Appellants,
Citizens of the State of Florida, Intervenor-Appellant.
 No. 92-2826.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 15, 1994.
 
 Stephanie A. Daniel, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, FL, for Williams, et al.
 Stephen M. Presnell, Office of Public Counsel, Tallahassee, FL, for Citizens of Florida.
 Robert J. Winicki, Don H. Lester, Mahoney Adams & Criser, P.A., Jacksonville, FL, for Panama City Medical Diagnostics, Ltd., Frank Syfrett, Steve Taylor.
 Dennis A. Richard, Richard and Richard, P.A., Miami, FL, for Winter Park MRI Partners, Meditek-Winter Park, MRI Wellington, Meditek-Wellington, Meditek-Palm Beach Gardens.
 John H. Pelzer, Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Ft. Lauderdale, FL, for Robert Kagan, Magnetic Imaging Systems.
 Michael W. Moskowitz, Borkson, Simon, Moskowitz & Mandell, P.A., Ft. Lauderdale, FL, for Magnedocs, Magwest, Kendall Therapy Center, Medical Park Diagnostic Multicenter, Kendall Medical Enterprises.
 Barry S. Richard, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Tallahassee, FL, for intervenors/appellees Meditek Entities.
 Appeal from the United States District Court for the Northern District of Florida.
 Before DUBINA and CARNES, Circuit Judges, and MORGAN, Senior Circuit Judge.
 DUBINA, Circuit Judge:
 
 
 1
 This is an appeal from an order of the district court permanently enjoining the state of Florida from enforcing a statute which imposes fee caps on providers of diagnostic imaging services. Specifically, appellants Robert B. Williams, et al. ("Williams"), challenge the district court's finding that the exemption from the fee cap for hospitals and group practices has no rational basis and thus, violates the Equal Protection Clause of the United States Constitution. Alternatively, Williams argues that even if the exemption is unconstitutional, the proper remedy is severance of the offending provision, as opposed to an injunction applied to the entire section. We hold that the fee cap exemption for hospitals and group practices has a conceivable rational basis and thus does not violate the Equal Protection Clause. Accordingly, we reverse the district court's order enjoining the enforcement of Chapter 92-178, Section 16, Laws of Florida.
 
 I. FACTS
 
 2
 For almost two decades, the Florida Legislature has grappled with the extremely difficult and complex issue of health care reform. In 1979, to aid in regulation of the health care industry, the legislature created the Health Care Cost Containment Board ("HCCB"). Although the HCCB was originally empowered only to review hospital budgets and certificates of need, its power has expanded greatly over the years. Currently, the HCCB has broad-based authority to review the costs of health care in the state of Florida.
 
 
 3
 In reaction to concern about physician referral practices and cost containment issues, the legislature in 1989 authorized the HCCB to conduct a study of joint venture arrangements, in which health care providers owned an interest in the clinics to which they referred patients for diagnostic imaging services. Diagnostic imaging services include, among other things: magnetic resonance imaging (MRI) procedures, computerized axial tomography (CAT) scans, and x-rays. The study revealed that both the cost and the utilization of diagnostic services in Florida is significantly higher than the national average. For example, it was reported that in 1989, Florida had more diagnostic imaging machines than the entire nation of Canada, with a population twice that of Florida, and West Germany, with a population five times that of Florida. The study also revealed that joint venture arrangements predominated in this sphere of health care service.
 
 
 4
 The legislature prepared a bill, "The Patient Self-Referral Act of 1992" ("the Act"), which incorporated the findings of the HCCB study. Section 7(2) of the Act contains a statement of legislative intent, which explains that the Act was created in order to address concerns over referral of patients to a provider of health care services in which the referring health care provider is an investor. The legislature intended to discourage such self-referral, and it was the stated intent to provide guidelines to health care providers regarding prohibited patient referrals. The Act was passed and became effective on April 8, 1992.
 
 
 5
 The original bill did not include fee caps as a cost containment measure. The fee schedule embodied in Section 16 of the Act, with which we are concerned here, was first proposed shortly before the Act was passed. As observed by the district court, Section 16 was passed with "little discussion" and was afforded only "cursory treatment;" it was both proposed and passed without meaningful debate.
 
 
 6
 Section 16 of the Act imposes a fee schedule on all providers of "designated health services," defined by the Act in section 7(3)(d) to mean "clinical laboratory services, physical therapy services, comprehensive rehabilitative services, diagnostic imaging services, and radiation therapy services." The fee schedule set a maximum cap on the fees for designated health services "limited to no more than 115% of the Medicare limiting charge for non-participating physicians for such services, including technical and professional components." As drafted, the Section 16 fee schedule applies regardless of whether or not the patient referral is from a health care provider who has an investment interest in the entity offering the designated service. The fee cap does not apply to patients eligible for Medicaid or Medicare reimbursement; rather, it applies to "private payors" who pay personally or through insurance coverage. The effect of the fee cap will be significant; an HCCB study completed after the legislation was passed indicates that providers subject to the fee cap could be put out of business.
 
 
 7
 Specifically exempt from the fee schedule are designated health services provided by hospitals and physician group practices. Thus, all other entities or persons providing such services, including physicians who are sole practitioners or who serve patients outside their group practices, are subject to the Section 16 fee restrictions. It is the constitutionality of this exemption which is at issue in the present case.
 
 II. PROCEDURAL HISTORY
 
 8
 In response to the fee schedule legislation, Panama City Medical Diagnostics, Ltd., Dr. Frank Syfrett, and Dr. Steve Taylor (collectively, "the plaintiffs"), filed a complaint for damages. Named as defendants were Robert Williams ("Williams"), in his official capacity as Secretary of the Department of Health and Rehabilitative Services, George Stuart ("Stuart"), in his official capacity as Secretary of the Department of Professional Regulation, and the Boards of Medicine, Optometry, Dentistry, Podiatric Medicine, Chiropractic and Osteopathic Medical Examiners ("the Board defendants"). In general, the plaintiffs challenge the constitutionality of the Act, alleging for our purposes that the hospital and group exemptions to the fee cap violate the Equal Protection Clause.
 
 
 9
 The plaintiffs filed a motion for a preliminary injunction, seeking an order enjoining the enforcement of Section 16 of the Act. This motion was joined by a variety of intervenors. A lengthy hearing was held on the motion, and it was agreed by the parties that the hearing would be final in terms of the equal protection issue. Following the hearing, the district court issued an oral ruling that there existed no rational basis for the group practice exemption to the fee schedule provided in Section 16, and that Section 16 therefore violated the Equal Protection Clause. The court held that the plaintiffs were entitled to a preliminary injunction, which would be made permanent.
 
 
 10
 Stuart and Williams then filed a motion for amendment or clarification of judgment, asking that the court cure the equal protection defect in Section 16 by severing the group practice exemption. The court entered a written order enjoining enforcement of Section 16, and further, denied the motion for severance. The issuance of the permanent injunction and the denial of the motion to sever are the subjects of this appeal.[1]
 
 III. STANDARD OF REVIEW
 
 11
 A district court's grant of an injunction will be reversed only when the district court abused its discretion. Planned Parenthood Association of the Atlanta Area, Inc. v. Miller, 934 F.2d 1462, 1471 (11th Cir.1991); Haitian Refugee Center, Inc. v. Baker, 953 F.2d 1498, 1505 (11th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992). Findings of fact made in connection with the grant of a preliminary injunction are set aside only if clearly erroneous. Conclusions of law are reviewed de novo. Planned Parenthood, 934 F.2d at 1471, citing Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1444 (11th Cir.1991).
 
 IV. DISCUSSION
 A. Equal Protection Claim
 
 12
 The crux of Williams' argument is that Section 16 presents no violation of the Equal Protection Clause, and thus the district court erred in granting the preliminary injunction because the plaintiffs did not meet all of the requisite elements. In order to prevail, a party seeking a preliminary injunction must establish: (1) a substantial likelihood that he or she will ultimately prevail on the merits; (2) a showing that he or she will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to him or her outweighs the harm the injunction may cause the opposing party; and (4) a showing that granting the injunction would not be adverse to the public interest. Duke v. Cleland, 954 F.2d 1526, 1529 (11th Cir.1992). Williams contends that the plaintiffs did not meet the first necessary element--substantial likelihood of success on the merits--because as a matter of law no equal protection violation exists in this case. We agree.
 
 
 13
 "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. ----, ----, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992). Therefore, unless the case involves a suspect class or a fundamental right, the Equal Protection Clause requires only that the classification be rationally related to a legitimate state interest. Id. at ---- - ----, 112 S.Ct. at 2331-32. See also Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439-441, 105 S.Ct. 3249, 3254-3255, 87 L.Ed.2d 313 (1985). The present case does not involve a suspect class, nor does it deal with a fundamental right; thus, Florida must only show a rational basis for the exemption from the fee cap.
 
 
 14
 Here, we must give great deference to the Florida Legislature because lawmakers are presumed to have acted constitutionally "despite the fact that, in practice, their laws result in some inequality." Nordlinger, 505 U.S. at ----, 112 S.Ct. at 2331, quoting McGowan v. Maryland, 366 U.S. 420, 425-426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). In addition to this threshold presumption, the Supreme Court has clearly held that in cases involving economic classifications, the rational basis test is extremely lenient.
 
 
 15
 [E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.
 
 
 16
 F.C.C. v. Beach Communications, Inc., --- U.S. ----, ----, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993) (citations omitted). This circuit has also held that "[a] searching inquiry into the validity of legislative judgments concerning economic regulation is not required.... The task is to determine if 'any set of facts may be reasonably conceived of to justify' the legislation." Cash Inn of Dade, Inc. v. Metropolitan Dade County, 938 F.2d 1239, 1241 (11th Cir.1991) (citations omitted, emphasis added). Thus, our review of this case must be "a paradigm of judicial restraint." Beach Communications, --- U.S. at ----, 113 S.Ct. at 2101.
 
 
 17
 Restraints on judicial review have "added force" in cases, such as the one at bar, in which the legislature must engage in line-drawing. Id., --- U.S. at ----, 113 S.Ct. at 2102.
 
 
 18
 Defining the class of persons subject to a regulatory requirement ... "inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration."
 
 
 19
 Id., quoting United States Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980). In regulating economic entities, legislatures are forced to draw distinctions between those that will fall under the regulations, and those that will not. "This necessity renders the precise coordinates of the resulting legislative judgment virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally." Beach Communications, --- U.S. at ----, 113 S.Ct. at 2102. Thus, legislatures are not required to address all aspects of a particular problem in one fell swoop. Rather,
 
 
 20
 reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.
 
 
 21
 Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955) (citations omitted).
 
 
 22
 Because legislatures are not required to articulate reasons for the enactment of a statute,[2] "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." Beach Communications, --- U.S. at ----, 113 S.Ct. at 2102. Therefore, in evaluating the rational basis for a statute, it is entirely permissible to rely on rationales that were not contemplated by the legislature at the time of the statute's passage.[3] Cash Inn, 938 F.2d at 1242. With these legal principles in mind, we consider the merits of this case.
 
 
 23
 Following a hearing on the equal protection issue, the district court entered an order enjoining enforcement of Section 16. In its order, the court focused on the legislature's objective in enacting the fee cap and noted that "[t]hree possibilities are suggested by the record." (July 21, 1992 order at p. 13.) The three possible objectives were: (1) a desire to protect the citizens of Florida from the harms of physician self-referral; (2) that the fee cap exemptions were a political quid pro quo to enable passage of the bill; or (3) a desire to decrease the cost of designated services, no matter who was providing them. The district court found these possible objectives unpersuasive as justifications for the fee cap exemptions.
 
 
 24
 However, the district court assumed without deciding that the legislature may have had a legitimate reason for exempting hospitals, due to the fact that hospitals in the state of Florida are already subject to cost containment measures. Nevertheless, the court ultimately held Section 16 unconstitutional because it found no rational basis for the exemption of group practices. The district court simply did not believe that the impetus for the fee cap exemptions was rationally related to any purpose that could be gleaned from the record.
 
 
 25
 The district court erred both in searching for the actual motivation of the legislation, and in confining its analysis to the facts on the record. This focus was in error because, as noted above, whether the hypothetical rationale actually motivated the legislation is irrelevant. The proper inquiry is concerned with the existence of a conceivable rational basis, not whether that basis was actually considered by the legislative body. In addition, a state "has no obligation to produce evidence to sustain the rationality of a statutory classification." Heller, --- U.S. at ----, 113 S.Ct. at 2643. Rather, the burden is on the challenger to disprove every conceivable basis which might support the classification, "whether or not the basis has a foundation in the record." Id.
 
 
 26
 For example, in Beach Communications, the Supreme Court dealt with an equal protection challenge to legislation regulating cable television. The regulation in question drew a distinction between facilities that served separately owned and managed buildings and those that served one or more buildings under common management or ownership. Cable facilities in the first category were exempt from the regulation provided that they did not use public rights-of-way. The issue before the Court was whether any conceivable rational basis existed to justify the distinction. Id., --- U.S. at ----, 113 S.Ct. at 2099.
 
 
 27
 The Court concluded that the distinction did not violate the Equal Protection Clause. Id., --- U.S. at ----, 113 S.Ct. at 2104. The Court found that there were at least two possible bases for the distinction, and thus concluded that the legislation had a rational basis. Significantly, the Court stated that even if the assumptions underlying the rationales were erroneous, "the very fact that they are 'arguable' is sufficient, on rational-basis review, to 'immuniz[e]' the congressional choice from constitutional challenge." Id., quoting Vance v. Bradley, 440 U.S. 93, 112, 99 S.Ct. 939, 950, 59 L.Ed.2d 171 (1979).
 
 
 28
 In the present case, a number of the various scenarios are "arguable." First and foremost, the hospital exemption has a conceivable rational basis due to the fact that Florida hospitals are already subject to cost containment measures. Second, while certainly a more difficult issue, it seems that several conceivable rationales exist to support the group practices exemption. One possible conceivable rational basis is that the legislature chose to exempt group practices because of the insignificant involvement of group practices in diagnostic imaging services. Another possibility is that a distinction between group practices and sole practitioners is justified by the assumption that group practices have a larger patient base from which to recoup the costs of purchasing expensive diagnostic imaging equipment, and are therefore less likely to need to refer patients for unnecessary procedures to recover their investment. Finally, it is conceivable that the legislature knew the fee caps would drive out of business everyone subject to them, and thus chose to exempt a small group in order to maintain the availability of diagnostic imaging in Florida. As noted above, even if these rationales are based on faulty premises, the fact that they are arguable guides our decision in this case.
 
 
 29
 Therefore, given the current "conceivable rational basis" test as articulated by the Supreme Court in Beach Communications, we are bound to hold that the fee cap exemptions embodied in Section 16 of the Act present no violation of the Equal Protection Clause.
 
 B. Severance
 
 30
 Williams argues in the alternative that if the fee cap exemptions are found to violate the Equal Protection Clause, they should be severed from the Act rather than enjoining enforcement of the entire section. Because we hold that the exemptions pose no constitutional violation, severance becomes a non-issue.
 
 V. CONCLUSION
 
 31
 The fee cap exemptions in Section 16 of the Act do not violate the Equal Protection Clause, and thus the district court's order enjoining the enforcement of Section 16 was in error.[4]
 
 
 32
 REVERSED and REMANDED.
 
 
 
 [1]
 The remaining challenges to the Act are still pending in the district court. That case is abated pending the outcome of this appeal
 
 
 [2]
 "[A] legislature that creates these categories need not 'actually articulate at any time the purpose or rationale supporting its classification.' " Heller v. Doe by Doe, --- U.S. ----, ----, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993), quoting Nordlinger, 505 U.S. at ----, 112 S.Ct. at 2334
 
 
 [3]
 For example, in Beach Communications, one of the rationales relied on by the Court was proffered not by the legislature in support of the challenged statute, but rather by a circuit judge, concurring in the circuit court's opinion. --- U.S. at ----, 113 S.Ct. at 2103
 
 
 [4]
 It is worth mentioning that the district court did not have the benefit of Beach Communications or Heller when it decided this case