Stanley HAVES, Marjorie Haves, his wife, Plaintiffs–Appellants,

v.

CITY OF MIAMI, a municipal corporation organized under the laws of the State of Florida, Defendant–Appellee.

No. 93–4762.

United States Court of Appeals, Eleventh Circuit.

May 19, 1995.

former Fifth Circuit handed down prior to October 1, 1981.

Spencer Marc Aronfeld, Coral Gables, FL, for appellants.

Theresa L. Girten, City Attorney's Office, Miami, FL, for appellee.

Before COX and BLACK, Circuit Judges, and FAY, Senior Circuit Judge.

BLACK, Circuit Judge:

In this case we must decide whether the district court properly granted summary judgment on Appellants' equal protection challenge to two City of Miami, Florida, ordinances prohibiting some, but not all, houseboats in the City. We affirm.

## I. BACKGROUND

### A. Facts

Appellants Stanley and Marjorie Haves have lived aboard a houseboat[1] in the City of Miami (City or Appellee) since 1970. Their houseboat is moored in the Little River Canal, alongside unimproved property owned by Marjorie Haves. The property is zoned R–1 residential by the City.

The City permitted residential use of houseboats until 1987,[2] when City Ordinance 10246 was adopted. Ordinance 10246 prohibited houseboats in the Little River Canal and in residential sections of the Miami River. City of Miami, Fla., Ordinance 10246 §§ 15183.1; 2024.1.4 (March 31, 1987). The Ordinance's stated goals were to (1) prevent potential hazards to navigation, (2) eliminate waste water discharge and other pollution, and (3) eliminate visual intrusions in residential neighborhoods. City of Miami Ordinance 10246 § 15181.

In 1990, the City adopted Ordinance 11000 to replace the existing comprehensive zoning ordinance, superseding Ordinance 10246 in the process. Ordinance 11000 adopted a comprehensive ban on the residential occupancy of all vessels, including houseboats, within the City. *See* City of Miami, Fla., Ordinance 11000 § 400.1 (March 8, 1990). In October 1991, the City adopted Ordinance 10932, which amended Ordinance 11000. Ordinance 10932 modifies the comprehensive houseboat ban by permitting 38 existing houseboats moored in the Miami River to remain despite Ordinance 11000. Ordinance 10932, however, does not grandfather those houseboats moored in the Little River Canal.

*See* City of Miami, Fla., Ordinance 10932 § 940 (October 24, 1991); Attachment A.[3]

### B. Procedural History

Appellants filed this case in state court to challenge the validity of Ordinances 10932 and 11000.[4] Appellee promptly removed to federal court based on federal subject matter jurisdiction.

Appellants' *pro se* complaint alleged that the City's adoption of the Ordinances violated the Equal Protection and Due Process Clauses of the United States Constitution and effected a taking in violation of the Fifth Amendment. It also alleged violations of rights secured by Sections 1 and 12 of the Declaration of Rights of the Constitution of Florida, and made an inverse condemnation claim under Florida law. The complaint asked for declaratory, injunctive, and monetary relief.

Following cross-motions for summary judgment and the presentation of extensive documentary evidence, the magistrate judge recommended granting Appellee's motion for summary judgment. The magistrate found that all of Appellants' claims depended upon the deprivation of a protectable property interest and that the lack of such an interest rendered summary judgment appropriate. The report did not specifically address Appellants' equal protection claim.

The district court adopted the magistrate's report and recommendation and dismissed Appellants' suit. This appeal follows.

## II. DISCUSSION

Appellants abandoned their substantive due process, Fifth Amendment takings, and

---

1. In this opinion, the term "houseboat" refers to all houseboats, housebarges, and other "live-aboard" vessels.

2. Prior zoning ordinances permitted the occupancy of houseboats and other vessels if the occupants received a special permit. *See* City of Miami, Fla., Ordinances 6871; 9500 (June 27, 1983). The Appellants never sought, and therefore never received, a special permit allowing their occupation of the houseboat.

3. Appellants' initial brief suggests that § 904.3 of Ordinance 10932 creates a blanket exception for houseboats docked on improved residential property. After reviewing the language of the Ordi-

nance and its legislative history, we conclude that no such exception exists. By providing that "one housebarge may be added to the dwelling unit per lot of record," Ordinance 10932 merely exempts the grandfathered Miami River houseboat owners from Ordinance 11000's "[o]ne dwelling unit per lot" requirement.

4. Appellants' complaint also mentions "two previous ordinances." Presumably, this is a reference to Ordinance 11000's predecessors, City Ordinances 6871 and 9500, and Ordinance 10246, which amended Ordinance 9500. Appellants now disclaim any challenge to the previous ordinances.

Florida inverse condemnation claims at oral argument. Any other state law claims, if not abandoned, are patently frivolous.[5] Therefore, the only issue before us is whether the district court properly dismissed Appellants' claim that Ordinances 10932 and 11000 violate the Constitution's guarantee of equal protection.

### A. Standard of Review

▮▮▮ This Court reviews the granting of summary judgment *de novo*, applying the same legal standards which bound the district court. *Parks v. City of Warner Robbins, Ga.,* 43 F.3d 609, 612–13 (11th Cir. 1995). Summary judgment is appropriate if the evidence before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment. *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro,* 38 F.3d 1571, 1578 (11th Cir.1994).

▮▮▮ The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Spence v. Zimmerman,* 873 F.2d 256, 257 (11th Cir.1989). The relevant rules of substantive law dictate the materiality of a disputed fact. *Anderson,* 477 U.S. at 247–49, 106 S.Ct. at 2510; *Thornton v. E.I. Du Pont De Nemours and Co., Inc.,* 22 F.3d 284, 288 (11th Cir.1994). A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor. *Anderson,* 477 U.S. at 249–51, 106 S.Ct. at 2511; *Thornton,* 22 F.3d at 288.

### B. The Equal Protection Claim

▮▮▮ The Equal Protection Clause proclaims that "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend.

XIV, § 1. This rule of equal treatment does not depend on the existence of an underlying property right. *Reserve, Ltd. v. Town of Longboat Key,* 17 F.3d 1374, 1381 (11th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 729, 130 L.Ed.2d 633 (1995). Therefore, Appellants' equal protection claim cannot be dismissed for lack of a protectable property interest. Consequently, we must examine whether another basis justifies the district court's granting of summary judgment. *See Parks,* 43 F.3d at 613.

▮▮▮ Appellants do not allege that Ordinances 10932 and 11000 contain "suspect classifications" on the basis of race, alienage, national origin, gender, or illegitimacy, nor do they allege that the Ordinances burden "fundamental rights" such as privacy and travel. *See City of Cleburne, Texas v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439–42, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985). Absent such allegations, zoning ordinances should be tested under the "rational-basis" standard. *See, e.g., Id.* at 439–40, 105 S.Ct. at 3254 (applying rational-basis scrutiny to a zoning ordinance); *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1541 (11th Cir.) (same), *cert. denied,* 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991); *Mackenzie v. City of Rockledge,* 920 F.2d 1554, 1559 (11th Cir.1991) (same). The rational-basis standard requires that classifications made by the challenged statutes or ordinances be rationally related to the achievement of some legitimate government purpose. *F.C.C. v. Beach Communications, Inc.,* —— U.S. ——, ——, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993); *Nordlinger v. Hahn,* —— U.S. ——, —— – ——, 112 S.Ct. 2326, 2331–32, 120 L.Ed.2d 1 (1992).

▮▮▮ The first step in determining whether legislation survives rational-basis scrutiny is identifying a legitimate government purpose—a goal—which the enacting government body *could* have been pursuing. The *actual* motivations of the enacting governmental body are entirely irrelevant. *Beach Communications,* —— U.S. at ——, ——, 113 S.Ct. at 2102, 2103; *Panama City*

---

5. Nothing in Sections 1 and 12 of Florida's Declaration of Rights supports any claim based upon the facts alleged in Appellants' complaint. *See* Fla. Const. Art. I, §§ 1, 12 (1993).

*Medical Diagnostic Ltd. v. Williams,* 13 F.3d 1541, 1546 (11th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 93, 130 L.Ed.2d 44 (1994). Moreover, the Equal Protection Clause does not require government decisionmakers to articulate any reason for their actions, *Beach Communications,* — U.S. at —, 113 S.Ct. at 2102; *Nordlinger,* — U.S. at —, 112 S.Ct. at 2334, nor does it require any record evidence of a legitimate purpose. *Panama City,* 13 F.3d at 1546.

▆▆▆▆ The second step of rational-basis scrutiny asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose. "The proper inquiry is concerned with the *existence* of a conceivably rational basis, not whether that basis was actually considered by the legislative body." *Panama City,* 13 F.3d at 1547. As long as reasons for the legislative classification may have been considered to be true, and the relationship between the classification and the goal "is not so attenuated as to render the distinction arbitrary or irrational," the legislation survives rational-basis scrutiny. *Nordlinger,* — U.S. at —, 112 S.Ct. at 2332. As with the legitimate purpose inquiry, courts are not confined to the record when determining whether a rational basis for the classification exists. *Beach Communications,* — U.S. at —, 113 S.Ct. at 2102; *Panama City,* 13 F.3d at 1545. In sum, "those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *Beach Communications,* — U.S. at —, 113 S.Ct. at 2102 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973)).

▆▆▆▆ It is clear that the houseboat restrictions in City Ordinance 11000 are constitutional under the principles outlined above. Its predecessor, Ordinance 10246, lists the prevention of (1) navigational hazards, (2) pollution, and (3) visual intrusions as its purposes. City of Miami Ordinance 10246, § 15181. The Court can accept these purposes as applying equally to Ordinance 11000 because nothing required the Miami City Commission to articulate its concerns when it

enacted Ordinance 11000, *Nordlinger,* — U.S. at —, 112 S.Ct. at 2334, and a court may rely on the rationale of a related, earlier act, *Beach Communications,* — U.S. at —, 113 S.Ct. at 2103. Appellants cannot seriously argue under the lenient rational-basis standard that the interests listed above are not legitimate or that the banning of houseboats would not further these ends. An occupied vessel will invariably generate pollution, some of which might end up in the City's waterways. Banning such vessels furthers the City's interest by reducing this source of water pollution. The fact that many other sources of pollution are allowed to exist does not render Ordinance 11000 irrational, because equal protection does not require the government to address any particular problem "in one fell swoop." *Panama City,* 13 F.3d at 1546.

▆▆▆▆ The grandfathering of existing units under Ordinance 10923 also serves a legitimate government purpose. The Equal Protection Clause gives government decisionmakers wide latitude when creating policy exemptions to an existing law. *Nordlinger,* — U.S. at —, 112 S.Ct. at 2335. A state may legitimately use grandfather provisions to protect property owners' reliance interests. *See Id.* at — – —, 112 S.Ct. at 2333–34; *City of New Orleans v. Dukes,* 427 U.S. 297, 305–06, 96 S.Ct. 2513, 2518, 49 L.Ed.2d 511 (1976). In short, the grandfathering of 38 Miami River houseboats out of Ordinance 11000's ban does not, by itself, violate the Equal Protection Clause.

Appellants argue that the City's different treatment of the Miami River houseboats versus the Little River Canal houseboats violates equal protection. First, they contend that the classifications made by Ordinance 10932 are not related to a legitimate government purpose. On the contrary, Appellants maintain that the City's purpose in treating the Little River Canal houseboat owners differently stems from an improper motive to retaliate for past litigation. Second, Appellants contend that, even if certain legitimate interests justify some City action to curtail vessel occupancy, the classifications drawn by Ordinances 11000 and 10932, by immediately eliminating Little River Canal house-

boats but grandfathering their Miami River counterparts, are not rationally related to the interests asserted by the City. Because factual disputes regarding the actual motives behind Ordinance 10932 and the rationality of the Ordinances still remain, Appellants maintain that summary judgment was inappropriate. We disagree.

■■■ While Appellants presented some evidence that Ordinance 10932's partial grandfathering scheme was motivated by an improper retaliatory motive, that evidence is irrelevant to our rational-basis inquiry. *Beach Communications,* —— U.S. at ——, 113 S.Ct. at 2102; *Panama City,* 13 F.3d at 1546. The evidence certainly creates an issue of fact, but that factual dispute is not material for summary judgment purposes because the *actual* motives of the City are not at issue. As long as the City can present at least one plausible, arguably legitimate purpose for the Ordinance, summary judgment for the City is appropriate unless the Appellants can demonstrate that the legislature could not possibly have relied on that purpose. *Heller v. Doe by Doe,* —— U.S. ——, ——, 113 S.Ct. 2637, 2643, 125 L.Ed.2d 257 (1993); *Panama City,* 13 F.3d at 1547. Appellants' evidence of improper motive does not create a genuine issue of material fact sufficient to survive summary judgment because the actual purposes of Ordinance 10932 are not relevant to a rational-basis equal protection inquiry.

Addressing Appellants' second argument, we must decide if the classifications drawn by Ordinance 10932 are rationally related to the achievement of the legitimate purposes identified by the City. The City identifies five reasons for treating Little River Canal houseboats different from Miami River houseboats. According to the City, the Little River Canal is: (1) more residential; (2) less industry intensive; (3) less polluted; (4) not as heavily trafficked; and (5) significantly narrower than the Miami River. If *any one* of these reasons could justify eliminating the Little River Canal houseboats while allowing the Miami River houseboats to remain, then the Ordinance must be upheld. *See Beach Communications,* —— U.S. at ——, 113 S.Ct. at 2103; *Alamo Rent–A–Car,*

*Inc. v. Sarasota–Manatee Airport Authority,* 825 F.2d 367, 371 (11th Cir.1987), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988).

Appellants failed to meet their burden of negating the City's proffered rationales. *See Beach Communications,* —— U.S. at ——, 113 S.Ct. at 2102. There is no evidence indicating that the City's zoning board could not reasonably believe that the predominantly residential nature of the Little River Canal area justified the immediate prohibition of houseboats in that area. On the contrary, the greater need for aesthetic uniformity and pollution control in residential areas renders the City's decision quite rational. The City could also rationally decide that a slow phase-out of houseboats on the heavily-polluted Miami River was environmentally acceptable because the houseboats are minor contributors to the River's overall pollution. On the less-polluted Little River Canal, the environmental impact of just a few houseboats could rationally be considered serious enough to justify their immediate removal from the waters. It is not the Court's function to determine whether the City's decision might ultimately prove to be, in some sense, "wrong," because "even if these rationales [relied upon by the City] are based on faulty premises, the fact that they are arguable guides our decision in this case." *Panama City,* 13 F.3d at 1547.

Reasonable people might disagree on the ultimate wisdom of the City's zoning decisions. But such disagreement does not create a material issue of fact for purposes of surviving a summary judgment motion. The inquiry is whether the zoning board *could* rationally believe that the Ordinances furthered some legitimate government purpose. Ordinances 10932 and 11000 certainly meet this lenient test. We hold that Miami City Ordinances 10932 and 11000 are rationally related to legitimate government purposes and, therefore, do not violate the Equal Protection Clause of the Constitution.

### III.  CONCLUSION

■■■ The leniency of rational-basis scrutiny provides the political branches the flexibility to address problems incrementally and to

engage in the delicate line-drawing process of legislation without undue interference from the judicial branch. *Beach Communications,* — U.S. at —, 113 S.Ct. at 2102. It gives the legislative branch its rightful independence and allows the political branches of government to function properly. *Id.* A contrary decision to the one we reach would turn the federal court into something it should never become: a zoning board of appeals. *Mackenzie,* 920 F.2d at 1558; *Spence,* 873 F.2d at 262; *Grant v. Seminole County, Fla.,* 817 F.2d 731, 736 (11th Cir. 1987). We affirm the district court's granting of summary judgment.

AFFIRMED.