James MULROE, Robert Dugan, and Thomas Horwath, on behalf of a class of similarly-situated persons, Plaintiffs,

v.

NEW YORK STATE THRUWAY AUTHORITY and John R. Platt, Executive Director, New York State Thruway Authority, Defendants.

No. 01 CV 3825(VM).

United States District Court, S.D. New York.

Dec. 27, 2002.

Michael Howard Sussman, Law Offices of Michael H. Sussman, Goshen, NY, for Plaintiffs.

Leonard Arthur Cohen, Attorney General of the State of New York, New York City, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiffs James Mulroe, Robert Dugan, and Thomas Horwath ("Plaintiffs") brought this action on behalf of a class of similarly-situated individuals against defendants New York State Thruway Authority (the "Authority") and John R. Platt, Executive Director of the Authority ("Platt," and together with the Authority, the "Defendants") alleging violations of the rights of the plaintiff class to equal protection of the law under the Fourteenth Amendment to the United States Constitution. Defendants filed a motion for summary judgment dismissing the complaint in its entirety. Plaintiffs opposed the mo-

tion and filed a cross-motion for summary judgment.[1] For the reasons described below, Defendants' motion is GRANTED and Plaintiffs' cross-motion is DENIED.

## I. *FACTS*

The facts in the instant case are not in dispute. The New York State Thruway (the "Thruway") is the longest toll highway in the United States, connecting many cities in the State of New York (the "State") to each other and to other states. Except for several toll-free sections, the Thruway has two separate and distinct fee systems, one which charges drivers a per-mile toll (the "Ticketed System") and one which charges drivers a fixed toll regardless of distance driven (the "Toll System"). The Ticketed System stretches within the State from Exit 15 in Orange County to Exit 50 in Erie County, with an additional section in Western New York running between Exit 55 and Exit 61 near the Pennsylvania border. Drivers using the Ticketed System receive a ticket upon entering the Thruway, and then pay a fee when they exit the Thruway that corresponds to the number of miles they have traveled on the Thruway. The Toll System includes portions of the Thruway south of Exit 16 to the Major Deegan Expressway in the Bronx, and west of Exit 50 to Buffalo. Drivers using the Toll System pay fixed tolls regardless of distance, collected at toll barriers placed periodically along the Thruway.

The Plaintiffs all reside in Orange County, and commute daily to their jobs using the Thruway. Every workday morning, each Plaintiff enters the Thruway at Exit 16 via the Toll System and travels south, either to another exit on the Thruway or to Manhattan. At the end of the day, each Plaintiff returns to Orange County, exiting via the Toll System at Exit 16. In the course of entering or exiting, each Plaintiff pays a $.50 toll at the toll plaza located at Exit 16, which translates into a $1.00 toll each roundtrip. Plaintiffs contend that such a toll adds up to $250 over the course of a year, if only workdays are counted.

Plaintiffs have brought this action to protest their alleged unequal treatment as opposed to other commuters who enter the Thruway either north or south of Exit 16. Commuters who enter south of Exit 16 at Exits 1 through 15 pay no toll, while commuters entering north of Exit 16 at Exit 17[2] can obtain a special discount through the "thruway annual permit plan" (the "Permit Plan"), which allows them to pay a total of $80 a year to travel south on the Thruway if they enter from Exit 17.[3] Plaintiffs contend that, without any rational basis, the Authority has divided commuters into unequal classes based solely on where they enter the Thruway, thus violating the equal protection clause of the Fourteenth Amendment to the United States Constitution.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

A motion for summary judgment may be granted only if the court concludes on the

---

1. The Court notes that the Plaintiffs' Memorandum of Law supporting their cross-motion and opposing the motion of the Defendants was missing a page. Plaintiffs' counsel declined to correct this omission, and requested that the Court proceed with the briefing papers as they were submitted.

2. Exit 17 is located approximately seventeen miles north of Exit 16.

3. The Permit Plan is valid only for trips of 30 miles or less. Permit holders who travel more than 30 miles on the Thruway pay full fare for all travel beyond the first 30 miles. Thus, since Exit 18 is 30.8 miles from Exit 16, where the Ticketed System ends, the only commuters using the Ticketed System who can drive the same route as the Plaintiffs and pay for only the Permit Plan are those who enter southbound at Exit 17.

basis of the record before it that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As noted above, there are no facts in dispute in the case at bar. Rather, both sides have asked the Court to render a judgment as a matter of law based on the record presented.

## B. *EQUAL PROTECTION ANALYSIS*

The Fourteenth Amendment of the United States Constitution prohibits a state from "deny[ing] any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. When a state statute or state action is subject to an equal protection challenge, the level of judicial scrutiny varies with the type of classification utilized and the nature of the right affected. If the statute or action involves an issue of social or economic policy and designs a classification that "neither proceeds along suspect lines nor infringes fundamental constitutional rights," the classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

 The first step in determining whether legislation survives rational-basis scrutiny is identifying a legitimate government purpose which the enacting government body could have been pursuing. The actual motivations of the enacting governmental body are entirely irrelevant. *See id.,* 508 U.S. at 315, 113 S.Ct. 2096. Indeed, the Equal Protection Clause does not even require government decision-makers to articulate any reason for their actions, *see id.,* nor does it require any

evidence on the record of a legitimate purpose. *See Panama City Medical Diagnostic Ltd. v. Williams,* 13 F.3d 1541, 1546 (11th Cir.1994).

The second step of rational-basis scrutiny asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose. "The proper inquiry is concerned with the existence of a conceivably rational basis, not whether that basis was actually considered by the legislative body." *Id.* at 1547. As long as reasons for the legislative classification may have been considered to be true, and the relationship between the classification and the goal "is not so attenuated as to render the distinction arbitrary or irrational," the legislation survives rational-basis scrutiny. *Nordlinger v. Hahn,* 505 U.S. 1, 11, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). As with the legitimate purpose inquiry, courts are not confined to the record when determining whether a rational basis for the classification exists. *Beach Communications,* 508 U.S. at 315, 113 S.Ct. 2096; *Panama City,* 13 F.3d at 1545. In sum, "those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *Beach Communications,* 508 U.S. at 315, 113 S.Ct. 2096 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)).

In the instant case, Defendants offer a variety of reasons why the two different systems and the alleged inequality among Thruway users exist. One stated reason is the Authority's desire to maintain a steady traffic flow. The Authority contends that the section of the Thruway from Exit 16 to New York City is one of the busier portions of the Thruway, so in an effort to reduce traffic jams, there are no toll plazas on this stretch, which allows commuters to

drive at a constant speed without slowing down or stopping as they enter or exit the Thruway. Indeed, the Authority claims that similar traffic jams are what spurred the Authority to move the southern terminus of the Ticketing System from Exit 14 to Exit 16 in 1973.

■ Such a claim is reasonable in light of the evidence the Authority submitted showing that the stretch from Exit 16 to New York City, while less than one-tenth the length of the Ticketed System, accounts for a total of vehicle miles traveled that is more than one-quarter that of the Ticketed System, and nearly one-sixth that of the entire Thruway. It also is logical that a road leading to the Tappan Zee Bridge, a massive Hudson River crossing that connects to one of the most populous cities in the world, would be a busy one. Thus, it is reasonable that the Authority has chosen not to build more toll plazas before Exit 16 to avoid making this already busy Thruway section even more congested.

The Authority also asserts that the disruption to traffic and the costs involved with erecting new toll plazas to extend the Ticketing System south would be disruptive and prohibitive. The Court finds this argument compelling. Construction often is the cause of significant traffic congestion in the New York region, and the thought of performing such construction work in close proximity to a major bridge inevitably raises the risk of major traffic problems.

In addition to the reasons mentioned above, the Authority raises several other factors that persuade the Court that there is a rational basis for the alleged unequal treatment of which Plaintiffs complain. First, the Authority contends that the Permit Plan was originally designed to appease the upstate communities which were disrupted by the building of the Thruway and did not have the same alternative routes that commuters like the Plaintiffs have. Moreover, the Authority claims that extending the Permit Plan could possibly cause the Authority to violate the terms of its covenants with the Thruway's bondholders. Plaintiffs do not refute any of these contentions, other than to claim that the Defendants "cannot elucidate any rationale, real or imaginable, for the differences" between the Plaintiffs and other commuters. Thus, the Court is inclined to accept the logical rationales that the Defendants provide in explaining the disparate treatment between the Plaintiffs and other commuters on the Thruway.

In accepting these rationales, the Court observes once again that rationality in making such classification decisions is all that the Defendants need demonstrate, for "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Beach Communications,* 508 U.S. at 313, 113 S.Ct. 2096. Indeed, absent evidence of invidious discrimination or utterly arbitrary decision-making, this Court does not have the power to act as "a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *City of New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Policy relating to installing, removing or relocating toll booths on the Thruway is a matter for the legislature to decide because such a decision involves a complex interplay of economic analysis, environmental considerations and political and community input. Were this Court to decide that the location of the Thruway's Exit 16 toll plaza was unconstitutional, it would be engaging in a legislative act based on the brief record before it and without the ability to evaluate the entire context of the Ticketed and

Toll Systems. Such action would constitute an unsound and unjustifiable exercise of judicial discretion.

## C. *QUALIFIED IMMUNITY*

In light of the Court's decision discussed above, the Court finds it unnecessary to discuss whether Platt is entitled to qualified immunity from liability.

## III. *CONCLUSION AND ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that the Defendants' motion for summary judgment is GRANTED; and it is further

**ORDERED** that the Plaintiffs' cross-motion for summary judgment is DENIED.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**