[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 19, 2003
THOMAS K. KAHN
CLERK**

No. 03-11203

D. C. Docket No. 00-02393-CV-JOF-1

GEORGIA CEMETERY ASSOCIATION, INC.,

Plaintiff-Appellant,

versus

CATHY COX, in her individual capacity and official
capacity as Secretary of State of the State of Georgia,

Defendant-Appellee.

—————————————

Appeal from the United States District Court
for the Northern District of Georgia

—————————————

**(December 19, 2003)**

Before ANDERSON, BARKETT and RONEY Circuit Judges.

PER CURIAM:

Georgia Cemetery Association, Inc. ("Georgia Cemetery"), an association of Georgia private for-profit cemeteries, makes Equal Protection and Takings Clause constitutional challenges to the Georgia Cemetery and Funeral Services Act of 2000 ("the Act"), O.C.G.A. § 10-14-1, *et seq.,* which exempts churches, fraternal, and community cemeteries from rules and regulations imposed upon other cemeteries. The district court granted summary judgment to the defendant Georgia Secretary of State ("the Secretary") on the Equal Protection claim. We affirm the judgment for the defendants, holding that, under the standard of review permitted to courts in such challenges to legislation, there is a reasonably conceived rational basis for distinguishing between the various cemeteries.

The Act

In 2000, the Georgia Assembly passed the Act setting forth the following purpose:

> The legislature recognizes that purchasers of preneed burial rights, funeral or burial merchandise, or funeral services or burial services may suffer serious economic harm if purchase money is not set aside for future use as intended by the purchaser and that the failure to maintain cemetery grounds properly may cause significant emotional distress. Therefore, it is necessary in the interest of the public welfare to regulate preneed dealers, licensees, registrants, and cemetery companies in this state. However, restrictions shall be imposed only to the extent necessary to protect the public from significant or discernible harm or

> damage and not in a manner which will unreasonably affect the competitive market.

O.C.G.A. § 10-14-2(a). The Act exempts, however, "governmentally owned cemeteries, fraternal cemeteries, cemeteries owned and operated by churches, synagogues, or communities or family burial plots." *Id.* § 10-14-3(8).

The Act, which authorizes the Georgia Secretary of State to enforce its provisions, sets forth several regulations applicable to private for-profit cemetery owners. Such regulations include registration requirements, filing fees, and a prohibition against operation of non-perpetual care cemeteries. *See id.* § 10-14-4. The Act requires private cemeteries to refund 100% of the purchase price plus interest for pre-need merchandise sold to consumers at any time prior to the consumer's death. *Id.* § 10-14-17(a)(3)-(4). The Act also sets a $50 fee limit for both the transfer of burial rights from one purchaser to another and assisting in the "sitting" of a monument on a burial plot. *Id.* § 10-14-17(c)(2), (d)(2).

The Equal Protection Challenge

Georgia Cemetery argues that the Georgia Assembly did not have a rational basis for its regulation of privately owned cemeteries through the Act because hearings conducted by the Secretary of State's office revealed complaints mostly about church operated – and *not* privately owned – cemeteries. Georgia Cemetery

3

also points to further record evidence revealing that 50-60% of the church owned cemeteries are abandoned and in complete disrepair. The Secretary argues that a purpose behind the regulation of private cemeteries is the legislature's belief that churches and other fraternal organizations are more likely to care for their cemetery grounds and have a closer relationship with their consumers, which generally precludes concern about fraud.

The decision in this case is driven by the standard by which such matters are viewed by the courts. All there need be is a conceivable rational basis for the legislation.

The Supreme Court has held that:

> [E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for classification.

*F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993) (internal citations omitted).

The controlling decision in this circuit is *Panama City Medical Diagnostic, Ltd. v. Williams*, 13 F.3d 1541, 1547 (11th Cir. 1994). There, the district court

4

enjoined a Florida statute which imposed a fee cap on providers of diagnostic imaging services on the ground that there was no rational basis for exempting from the fee cap hospitals and group practices. This Court reversed on the ground that the exemption had a conceivable rational basis. We held that the court must give great deference to a state legislature "because lawmakers are presumed to have acted constitutionally 'despite the fact that, in practice, their laws result in some inequality.'" *Id.* at 1545 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). This is because "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choice." *F.C.C.*, 508 U.S. at 313 (internal citations omitted). "'A searching inquiry into the validity of legislative judgments concerning economic regulation is not required.'" *Panama City Medical Diagnostic, Ltd.*, 13 F.3d at 1545 (quoting *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1241 (11th Cir. 1991)). Our task on review of the Act is merely to determine if "'any set of facts may be reasonably conceived of to justify' the legislation." *Id.* (quoting *Cash Inn of Dade, Inc.*, 938 F.2d at 1241).

Under this standard, two things become *irrelevant* to the inquiry. *First*: Whether the conceived reason was in fact the reason for the legislation. In *Panama City Medical Diagnostic*, relying on *Beach Communications*, this Court noted, "Because legislatures are not required to articulate reasons for the enactment of a

5

statute, 'it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.'" *Panama City Medical Diagnostic, Ltd.*, 13 F.3d at 1545 (quoting *Beach Communications*, 508 U.S. at 315). *Second:* Whether substantial evidence supports the conceived rationale. Even if the legislation is based on "faulty premises," so long as there is any "*conceivable* rational basis" to differentiate between cemeteries operated by the government, churches and other fraternal organizations and all other cemeteries, the court cannot become involved in an evidentiary contest as to whether this is an actual rational basis for such differentiation. *See Panama City Medical Diagnostic, Ltd.*, 13 F.3d at 1547.

The Georgia Assembly recognized in the text of the Act that "purchasers of preneed burial rights, funeral or burial merchandise, or funeral services or burial services may suffer serious economic harm if purchase money is not set aside for future use as intended by the purchaser and that the failure to maintain cemetery grounds properly may cause significant emotional distress." O.C.G.A. § 10-14-2(a). That is, the legislature's intent was to protect consumers from, among other things, economic harm if monies advanced by consumers to cemetery owners for preneed burial services were gulled. One rational construction of this legislative intent is, as the Secretary contends, the legislature's belief that churches and other fraternal

organizations are more likely to care for their cemetery grounds and have a *closer relationship* with their consumers, which would presumptively lessen the problem of consumers being defrauded and contrastingly could occur with cemeteries operated for-profit. This is a conceivable rational basis for the Act's exemptions, which protects the Act from a constitutional challenge even if the Secretary is now relying "on rationales that were not contemplated by the legislature at the time of the [Act's] passage." *Panama City Medical Diagnostic, Ltd.*, 13 F.3d at 1546 (internal citation and quotation omitted).

<u>Takings Clause Claim</u>

The district court held that the plaintiff Georgia Cemetery lacked associational standing to assert a Takings Clause claim, holding that the plaintiff was making an as applied challenge to the legislation. On appeal Georgia Cemetery contended that it was actually asserting a facial challenge seeking only declaratory and injunctive relief to the Act and asserted that the result of the Rule 12(b)(6) ruling would have been different had the district court done the same.

Whether viewed as a standing argument or a merits argument, however, the analysis is the same for both and supports the judgment for the defendant. The Act sets a $50 fee limit for both the transfer of burial rights from one purchaser to another and assisting in the "siting" of a monument on a burial plot. *See* O.C.G.A. § 10-14-

17(c)(2), (d)(2). The Association asserts, on behalf of its members, that the Act thus unconstitutionally prevents its members from contracting to establish a price greater than $50 to site a monument on the lot on which it is to be installed in its members' cemeteries and from contracting to establish a price greater than $50 to transfer burial rights, which both economically impact the "distinct investment backed expectations" of its members and thus constitutes an impermissible taking.

As to standing, the Association must show that "neither the claim asserted nor the relief requested requires the participation of individual members [of the association] in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). As to a facial challenge to an Act, "the challenger must establish that *no set of circumstances exists* under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1995) (emphasis supplied).

Under either analysis, there would be no taking from a Georgia private cemetery that does not charge greater than $50 for the transfer of burial rights from one individual to another or for a monument siting. *See e.g.*, *Nebbia v. New York*, 291 U.S. 502, 527-28 (1934) (upholding price controls on milk and rejecting argument that Constitution "guarantee[s] the unrestricted privilege to engage in a business or to conduct it as one pleases."); *see also Pennell v. City of San Jose*, 485 U.S. 1, 19-23 (1988) (discussing the Court's Takings Clause decisions). Under those

8

circumstances, there would not be grounds for alleging an unconstitutional taking as to all of its members. The defendant thus properly argues that the Association cannot make the showing necessary for either standing or a successful facial challenge without the participation of its members because the economic impact of these provisions will vary depending upon the economic circumstances of each of its members. For that reason, the district court did not err by granting judgment on the pleadings in favor of the Secretary on Georgia Cemetery's Takings Clause claim.

AFFIRMED.