**IN RE: Ben H. WILLINGHAM,** **Debtor.**

**Abdullah M. Al–Rayes et al., Plaintiffs,**

**v.**

**Ben H. Willingham, Defendant.**

**Case No.: 3:11–bk–1002–JAF** **Adv. No.: 3:11–ap–269–JAF**

United States Bankruptcy Court, M.D. Florida **Jacksonville Division**

March 18, 2013

Mike E. Jorgensen, 11250 St. Augustine Rd., # 15353, Jacksonville, FL 32257, 904–619–8890, mjorgensen@seniorcounsellaw.com, for Debtor.

Chapter 7

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR THE COURT TO TAKE JUDICIAL NOTICE OF PRIOR LAW SUITS FILED AGAINST DEFENDANT**

JERRY A. FUNK, United States Bankruptcy Judge

This proceeding is before the Court on Debtor Ben H. Willingham's (the "Defendant") Motion for Summary Judgment and Integrated Memorandum of Law (Doc. 34, the "Motion for Summary Judgment"). Plaintiffs filed a response in opposition to the Motion (Doc. 37, the "Response"), to which Defendant filed a reply brief (Doc. 44, the "Reply").

Contemporaneously with the Response, Plaintiffs filed a motion for the Court to take judicial notice of two prior law suits brought against Defendant as evidence of a purported common scheme or plan to defraud Plaintiffs (Doc. 38, the "Motion for the Court to Take Judicial Notice"), to which Defendant filed an objection (Doc. 45, the "Objection"). For the reasons stated herein: (1) the Motion for Summary Judgment (Doc. 34) is denied; and (2) the Motion for the Court to Take Judicial Notice (Doc. 38) is denied without prejudice.

**I. BACKGROUND**

On February 17, 2011 (the "Petition Date"), the Defendant filed a voluntary Chapter 7 Petition (the "Petition"). Prior to the Petition Date, on March 15, 2007, the United States District Court for the Middle District of Florida, Jacksonville Division, entered a Consent Judgment in favor of Plaintiffs and against the Defendant in the amount of $25,707,605.00 (Doc. 1–1, the "Judgment") in Case No. 3:06–cv–362–MMH–JRK (Doc. 67) (the "District Court Litigation").

In the District Court Litigation, Plaintiffs alleged claims against the Defendant for, *inter alia,* fraud under the federal and state RICO statutes *(see* Doc. 1–2, "District Court Complaint"). More particularly, Plaintiffs asserted that their claims arose out of a massive fraud perpetrated by the Defendant who, unbeknownst to Plaintiffs, acted as both a seller to, and as an agent for, Plaintiffs in connection with the purchase by Plaintiffs of several commercial office buildings.

It was alleged in the District Court Complaint that Defendant represented Plaintiffs' interests in negotiations for the purchase of various commercial office buildings as an agent for Plaintiffs. Subsequently, after taking Plaintiffs' purchase money, the Defendant would purchase a commercial office building with Plaintiffs' funds from the owner (which was either a third party or, at times, one of the Defendant's corporations) and then re-sell it to

Plaintiffs at a substantial undisclosed markup shortly thereafter. The damages suffered by Plaintiffs as a result of Defendant's conduct are purportedly represented, at least in part, by the Judgment in the amount of $25,707,605.00.[1] The Consent Judgment explicitly states that it was entered "without concession on the part of [Defendant] as to the merits of the claims" asserted against him (Doc. 1, Ex. A).

Plaintiffs filed the instant adversary proceeding pursuant to section 523 of the Bankruptcy Code,[2] objecting to the dischargeability of the amount represented by the Judgment (Doc. 14, "Amended Complaint"). In the Amended Complaint, it is asserted that the general fraudulent scheme of Defendant was to gain the trust of a potential foreign investor in commercial real estate and, while claiming to act on behalf of that investor, locate and negotiate the purchase of such real property with the stated expectation of earning a profit through an agreement to manage the property after the purchase (*id.* at 5). It is alleged that Defendant would, using the investor's money, purchase the commercial real property in the name of a corporate entity controlled by Defendant at one price and then re-sell the property to the investor at a substantially higher price shortly thereafter (*id.*).

Plaintiffs allege Defendant engaged in such a scheme with respect to their purchase of nine commercial office buildings (*id.* at 6–20). By way of example, one such building was known as the "Kenmar Medical Building" (*id.* at 14). Plaintiffs allege Defendant offered to negotiate the purchase of the Kenmar Medical Building on behalf of the principal of the Plaintiffs, Abdullah M. Al–Rayes (*id.*). It is alleged that Defendant represented that he would function as a buyer's agent and attempt to acquire the property for the benefit of Mr. Al–Rayes (*id.* at 5–6, 14–15).

As part of the alleged scheme, Defendant advised Mr. Al–Rayes to use one of Defendant's entities, Corim, Inc., to purchase the property to avoid a purported inevitable markup in price if the seller realized the identity of the true buyer (*i.e.,* a wealthy foreign investor) (*see id.* at 12). After acquiring the property, Corim, Inc. would then re-sell the property to an entity owned by Mr. Al–Rayes. Defendant apparently never advised Mr. Al–Rayes that he intended to obtain the property for a substantially lesser price than that which he claimed it was being sold for, and then re-sell it to Mr. Al–Rayes for a significant undisclosed markup. With respect to the Kenmar Medical Building, it is alleged that one of Defendant's entities, Corim, Inc., deeded the property to an entity owned by Mr. Al–Rayes, Ranger Investments, Inc., on December 29, 1995, for a purchase price of $8,500,000.00. That same day, however, the Kenmar Medical Building was deeded to Corim, Inc. by the prior owner based on a purchase price of $5,950,000.00, resulting in an undisclosed markup to Mr. Al–Rayes of $2,550,000.00.[3]

---

**1.** The District Court Complaint contains twenty-two counts, several of which are claims for general breach of contract damages (Doc. 1, Ex. B). Consequently, it is not clear what portion of the amount awarded pursuant to the Consent Judgment is attributable to Plaintiffs' claims of fraud and breach of fiduciary duty.

**2.** Unless otherwise indicated, all references to the "Bankruptcy Code" or "Code" are to 11

U.S.C. § 101 *et seq.,* and all references to a "Bankruptcy Rule" or "Rule" are to the Federal Rules of Bankruptcy Procedure.

**3.** While the Court is not making a finding in this regard, in the more than one-thousand pages of exhibits attached to the Motion for Summary Judgment, it appears that on December 6, 1995 Defendant agreed to purchase the Kenmar Medical Center from a third party for $7,850,000.00, and that he re-sold it to

By way of the Amended Complaint, Plaintiffs also object to the discharge of Defendant pursuant to section 727 of the Code. In objecting to Defendant's discharge, Plaintiffs allege that, subsequent to the Petition Date, Defendant committed various acts and/or omissions that constitute grounds for the denial of his discharge.

Specifically, it is alleged that Defendant failed to list on his bankruptcy schedules a potentially valuable antique watch, an equity membership in a prestigious golf country club, and golf clubs (Doc. 14 at 4–5, 20–21). In addition, it is alleged that Defendant received numerous wire transfers, purportedly from an off-shore account held by his wife, and that upon information and belief this account was at various times funded with ill-gotten gains from the fraudulent scheme allegedly perpetrated by Defendant *(id.)*.

In the underlying bankruptcy case, the Chapter 7 Trustee filed a motion to compel turnover of all the proceeds of the off-shore account, *supra,* as well as all financial records of the off-shore account that detail the aforementioned wire-transfers (Case No. 3:11–bk–1002–JAF [Doc. 42] ). On February 15, 2013, the Court granted the motion to compel insofar as it required the production of financial records related to the off-shore account (Case No. 3:11–bk–1002–JAF [Doc. 65] ). The Court's Findings of Fact and Conclusions of Law in this regard (Case No. 3:11–bk–1002–JAF [Doc. 66] ) are incorporated herein by reference.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 is applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056. Granting summary judgment is appropriate if, based upon the materials in the record, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The non-moving party, after a movant makes a properly supported summary judgment motion, must establish specific facts showing the existence of a genuine issue of fact for trial. FED. R. CIV. P. 56(c). The non-moving party may not rely on the allegations or denials in its pleadings to establish a genuine issue of fact, but must come forward with an affirmative showing of evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court determining entitlement to summary judgment must view all evidence and make reasonable inferences in favor of the party opposing the motion. *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir.1995).

## III. ANALYSIS

In the Motion for Summary Judgment (Doc. 34), Defendant argues, *inter alia,* that there are no genuine issues of material fact, and that summary judgment should be entered in his favor.

In support of this argument, Defendant states he was not acting as an agent for Plaintiffs, and that he was at all times representing the interests of the sellers of the commercial real property, which at times was one or more of Defendant's corporations (Doc. 34 at 30–31). Defendant further provides that he was under no

---

Mr. Al–Rayes on December 22, 1995 for $8,500,000.00 (Doc. 34–7 at 23, 29). Based

on these figures, the purported undisclosed markup would be $650,000.00.

duty to sell Plaintiffs the commercial property at the same price he or his companies paid to acquire the properties *(id.* at 30). Additionally, Defendant asserts that Plaintiffs have failed to establish credible damages as their calculations do not account for mortgages on the properties that were paid off from the proceeds of the sale(s), marketing costs, repairs, and improvements made to the properties *(id.).* Defendant posits that all of the damage sums are "unsupported in fact" *(id.).*

In opposition to Defendant's Motion for Summary Judgment, Plaintiffs submit an affidavit of Mr. Al–Rayes (Doc. 37–1, the "Affidavit"). In the Affidavit, Mr. Al–Rayes testifies that, unbeknownst to Plaintiffs, Defendant acted as both a seller to, and as an agent for, Plaintiffs in connection with the purchase by Plaintiffs of the subject commercial office buildings (Doc. 37–1 at 2). Mr. Al–Rayes states that "after taking Plaintiffs' purchase money, the Debtor would purchase the commercial office building with these funds from the true owner which was either a third party or, at times, one of the Debtor's corporations, and 'flip' it to Plaintiffs at a substantial undisclosed markup shortly thereafter" *(id.).* Attached to the Affidavit is Exhibit A, which itemizes the damages Plaintiffs assert they suffered as a result of Defendant's purported fraudulent scheme *(id.* at 4–5).

Additionally, Plaintiffs cite the deposition testimony of Mr. Al–Rayes, wherein Mr. Al–Rayes claims Defendant, as Plaintiffs' agent, was supposed to negotiate the subject real estate transactions on behalf of the Plaintiffs, and that Plaintiffs were never aware Defendant purchased the properties in order to sell them to Plaintiffs at a significant undisclosed markup (Doc. 34–6 at 10, 13). Mr. Al–Rayes testi-

fied that he never performed due diligence with respect to the subject purchases because he believed Defendant was conducting due diligence on behalf of the Plaintiffs as their trusted agent in the United States *(id.* at 16, 23).

■ The aforementioned assertions of the parties, taken in conjunction with the affidavits, depositions, and documentary evidence, raise genuine issues of material fact as to whether Defendant engaged in a fraudulent scheme by acting as both an agent for, and as a seller to, Plaintiffs in relation to the real estate transactions in question. Such issues of fact preclude the entry of summary judgment in Defendant's favor.

■ Moreover, the Eleventh Circuit Court of Appeals has made it clear that it is improper for a court to enter summary judgment when a party has been compelled to produce discovery. *Snook v. Trust Co. of Ga. Bank of Savannah,* 859 F.2d 865, 870 (11th Cir.1988). As noted previously, in the underlying case, Defendant and his wife have been compelled by the Court to produce financial records related to the off-shore account, *supra* (Case No. 3:11–bk–1002–JAF [Doc. 65] ).[4] It is clear that the documents compelled to be produced are relevant to the issues raised in Defendant's Motion for Summary Judgment.

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied.

■ With respect to Plaintiffs' Motion for the Court to Take Judicial Notice of two prior law suits that were filed against Defendant as evidence of a purported common scheme or plan to defraud Plaintiffs (Doc. 38), the Court finds the motion is premature at this juncture. For this rea-

---

**4.** Plaintiffs maintain Defendant concealed his gains from the purported fraudulent scheme in the subject off-shore account (*see* Doc. 14 at 3; Doc. 34 at 41).

son, the Court will deny the motion without prejudice to re-file at trial.

### IV.  CONCLUSION

Based on the foregoing, it is **ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. 34) is denied.
2. Plaintiffs' Motion for the Court to Take Judicial Notice (Doc. 38) is denied without prejudice.