[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15372
Non-Argument Calendar
_____

D.C. Docket No. 0:15-cv-60535-BB


HUMBERTO PELLEGRINO,
PEDRO CLAVERIA,

Plaintiffs-Appellants,

versus

GERALD WENGERT,
a deputy with the Broward Sheriff's Office,
DAVIS ACEVEDO,
a deputy with the Broward Sheriff's Office,
BROWARD COUNTY SHERIFF'S OFFICE,
Scott J. Israel, Sheriff in his official capacity,
LEONARD SMITH,

Defendants-Appellees,

STEPHEN ROBERTS,
a deputy with the Broward Sheriff's Office,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 9, 2017)

Before ED CARNES, Chief Judge, TJOFLAT, and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Humberto Pellegrino and Pedro Claveria filed this action against Sheriff Scott Israel, in his official capacity as Broward County Sheriff,[1] as well as against certain deputies of the Sheriff's Office. They assert claims for excessive force under 42 U.S.C. § 1983 against the Sheriff's Office and the deputies, and state law claims against the deputies. The Sheriff's Office moved for summary judgment as to the claims against it, and the district court granted that motion and certified its judgment as final under Federal Rule of Civil Procedure 54(b). This is the plaintiffs' appeal of the judgment in favor of the Sheriff's Office itself.

---

[1] The parties refer to the claims against Israel in his official capacity as claims against the Sheriff's Office, and we will also. See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) ("In contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent. Such suits against municipal officers are therefore, in actuality, suits directly against the [local government body] that the officer represents.") (quotation marks and citations omitted).

2

I.

In January 2014 Pellegrino and Claveria, who are "street artists," trespassed onto some property to spray paint train cars.[2]  A security guard on neighboring property spotted them and called the police.  Three Sheriff's Office deputies, Gerald Wengert, Davis Acevedo, and Leonard Smith, arrived at the scene along with Acevedo's K-9 partner.  After the deputies identified themselves as law enforcement and told Pellegrino and Claveria to lie down on the ground, Claveria climbed from underneath a train car, lay face-down with his arms out, and surrendered.  According to Pellegrino and Claveria, Acevedo's K-9 partner then attacked Claveria, biting his body for "three to four minutes."  Pellegrino also obeyed the officers' instructions and after he got down on the ground, Acevedo's K-9 partner turned his attention to Pellegrino, attacking him for "a few minutes." While the dog was attacking them, Pellegrino and Claveria heard the three officers encouraging the dog to "get him" and to "eat, boy."

II.

We review de novo the district court's grant of summary judgment. See Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material

---

[2]  "At summary judgment we view the facts in the light most favorable to the nonmoving party."  Crawford v. Carroll, 529 F.3d 961, 964 n.1 (11th Cir. 2008).

fact and that the moving party is entitled to a judgment as a matter of law." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (quotation marks omitted).

The claims at issue in this appeal are against the Sheriff's Office, which is considered a municipal local government body that "cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1307 (11th Cir. 2001). Instead, "only deprivations undertaken pursuant to governmental custom or policy may lead to the imposition of governmental liability." Id. (quotation marks omitted). And "an act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388 (1997). Custom can also take the form of a "policy of inaction" when the municipality has notice that failing to discipline misconduct will cause constitutional violations, but that inaction must be "the functional equivalent of a decision by the [municipality] itself to violate the Constitution." Connick v. Thompson, 563 U.S. 51, 61–62, 131 S. Ct. 1350, 1360 (2011) (quotation marks omitted). To establish the Sheriff's Office's liability, the plaintiffs must show that it acted with deliberate indifference, which is "a stringent standard of fault, requiring proof that a municipal actor

4

disregarded a known or obvious consequence of his action." Id. at 61, 131 S. Ct. at 1360 (quotation marks omitted).[3]

III.

The plaintiffs first contend that there was a genuine issue of material fact as to whether the Sheriff's Office was deliberately indifferent to their constitutional rights to be free from excessive force because it did not discipline or terminate Wengert before the alleged events giving rise to this case. The plaintiffs point to the following evidence to support that contention: (1) Wengert had numerous excessive force complaints filed against him before the plaintiffs were attacked, (2) the Sheriff's Office brought a self-generated excessive force investigation about an unrelated incident involving Wengert, (3) the plaintiffs' expert testified that Wengert should have been fired or at least removed from the K-9 unit, and (4) before the plaintiffs were attacked by Acevedo's K-9 someone distributed "community warning" flyers asserting that Wengert was "an aggressive and abusive officer and under investigation."

The plaintiffs presented evidence that five excessive force complaints had been filed against Wengert and that the Sheriff's Office had opened a self-

---

[3] The Sheriff's Office does not dispute, for purposes of this appeal, whether the facts viewed in the light most favorable to the plaintiffs establish that Wengert, Acevedo, and Smith violated the plaintiffs' constitutional rights by using excessive force. We assume that there was an underlying constitutional violation.

generated investigation into another incident where he had used force.[4]  After reviewing the evidence regarding four excessive force complaints, the Professional Standards Committee concluded that Wengert was "exonerated," which, according to the Sheriff's Office's manual, that means that the "[a]lleged actions occurred, but were lawful and proper."  For one complaint, the Committee concluded that it was "unfounded," which, according to the Sheriff's Office's manual, means that the "[a]llegations are false or not supported by facts."  As for the self-generated investigation, Major Angelo Cedeno of the Sheriff's Office testified in his deposition that it involved a claim of excessive force against Wengert but that the investigation was still active and, as a result, Cedeno would not discuss the details of it.[5]

The plaintiffs do not take issue with the procedures used to reach those conclusions.  They do not contend that the Sheriff's Office ignored or improperly investigated those complaints.   Instead, the plaintiffs are arguing that the Committee's findings of "unfounded" or "exonerated" were erroneous and that the

---

[4] When the Sheriff's Office receives an excessive force complaint, its internal affairs department investigates and gathers evidence about the allegations.  The internal affairs department then gives that evidence to a Professional Standards Committee, which is a panel composed of law enforcement and detention employees, union members, and civilians.  The Committee considers the evidence and decides under a preponderance standard whether it shows that the officer used excessive force.

[5] The plaintiffs also point to another occasion when Wengert allegedly used excessive force, which internal affairs did not investigate.  The citizen involved in that incident, however, never filed a use of force complaint with internal affairs to prompt any investigation.

Sheriff's Office, having followed admittedly proper procedures for investigating and resolving the complaints against Wengert, should have disregarded the Committee's findings and disciplined or fired Wengert anyway. They assert that the Sheriff's Office acted with deliberate indifference by failing to second guess the Committee's conclusions, even though no evidence showed that the Sheriff's Office should have known that the conclusions were erroneous.[6]

The excessive force complaints do not raise a genuine issue as to whether the Sheriff's Office's failure to discipline Wengert was functionally equivalent to deciding to violate the Constitution. See Connick, 563 U.S. at 61–62, 131 S. Ct. at 1360. The evidence showed that the internal affairs investigations and the Committee's actions in dealing with the excessive force complaints were conducted in accordance with the Sheriff's Office's policies, which the plaintiffs do not challenge. And the plaintiffs have failed to raise a genuine issue as to whether the Sheriff's Office knew or should have known that the Committee's conclusions were erroneous.[7] As a result, the Sheriff's Office's decision to accept

---

[6] The plaintiffs proffered an expert opinion along the same lines. Their expert concluded that Wengert should have been fired or disciplined, but he based that conclusion on the premise that the Sheriff's Office should have rejected the Committee's findings. Following undisputedly proper procedures for investigating complaints then accepting the findings that result from those procedures does not amount to deliberate indifference.

[7] As evidence that the Committee's conclusions were wrong, the plaintiffs point to anonymously distributed flyers, which stated that Wengert was "known to beat up high school students," has had complaints filed against him, and has been sued for his aggressive behavior. But it is undisputed that the Sheriff's Office investigated the use of force complaints against Wengert, including one involving a high school student. As we have already discussed, the

7

the Committee's conclusions that discipline was not warranted does not raise a genuine issue of material fact showing that the Sheriff's Office was deliberately indifferent to the plaintiffs' constitutional rights.[8]

## IV.

The plaintiffs also contend that the Sheriff's Office is liable because it had an unofficial custom of allowing officers to use excessive force. See Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991) ("To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.") (quotation marks omitted). As evidence of that custom they point to (1) the use of force complaints filed against Wengert and the Sheriff's Office's decision to accept the Committee's findings that discipline was

---

Committee concluded that the use of force complaints were "unfounded" or "exonerated" and the Sheriff's Office accepted those conclusions. It is far from deliberately indifferent for the Sheriff's Office to credit the Committee's findings over the allegations in an anonymous flyer in determining whether one of its officers should be disciplined or fired.

[8] Even if the plaintiffs had shown that the Sheriff's Office's failure to discipline Wengert demonstrated deliberate indifference, they still have not raised a genuine issue of material fact as to causation. See City of Canton v. Harris, 489 U.S. 378, 391, 109 S. Ct. 1197, 1206 (1989) ("For [municipal] liability to attach in this circumstance the identified deficiency . . . must be closely related to the ultimate injury. Thus in the case at hand, [the plaintiff] must still prove that the deficiency . . . actually caused the [constitutional violation]."). Wengert's role in the plaintiffs' K-9 attack was one involving a failure to intervene, and it was Acevedo who handled the dog that night. The plaintiffs offer no evidence showing that, had the Sheriff's Office disciplined Wengert for using excessive force, Acevedo would not have sicced his K-9 on the plaintiffs or that Wengert would have intervened to stop him.

not warranted, (2) four internal affairs complaints asserting excessive force based on other officers' K-9 use, (3) the fact that the Sheriff's Office demoted an officer after he raised concerns about a different agency's use of excessive force, and (4) their expert's testimony that the Sheriff's Office improperly failed to discipline their officers for using excessive force.

The Sheriff's Office's decision to accept the Committee's findings that the complaints against Wengert did not warrant discipline is not evidence of a custom of allowing officers to use excessive force. As we have already explained, the internal affairs investigations and the Committee's meetings were conducted according to the Sheriff's Office's written policies and procedures, which the plaintiffs concede are adequate.

As for the four K-9 excessive force complaints brought against other officers at the Sheriff's Office, Major Cedeno testified in his deposition that three of those complaints underwent preliminary investigations to see if an internal affairs investigation was warranted, which revealed that no misconduct had taken place. The fourth complaint, after undergoing a preliminary investigation, was investigated further and the Committee found that it was "unsustained." Without any evidence that those investigations were improperly carried out or that the Sheriff's Office knew that the Committee's conclusion of "unsustained" was

9

incorrect, those excessive force complaints do not raise a genuine issue as to a custom of allowing officers to use excessive force.

The plaintiffs also point to evidence showing that the Sheriff's Office demoted Officer Jeffrey Kogan after he reported that another police department's officer had unnecessarily allowed a K-9 to attack a suspect. After he reported that incident, Kogan told his supervisor that the Florida Department of Law Enforcement had asked him to give a statement about it, and he was later reclassified from homicide detective to beach patrol officer.[9] That demotion might be evidence that the Sheriff's Office punishes officers who report another officer's misconduct,[10] but it is not evidence that the Sheriff's Office has a custom of allowing its own officers to use excessive force.

The plaintiffs also point to their expert, who testified that the Sheriff's Office had an informal custom of allowing and ratifying officers' use of excessive force. The expert came to that conclusion based on (1) the Sheriff's Office's decision to accept the Committee's findings that Wengert and others should not be disciplined after evaluating the evidence gathered from the investigations of excessive force complaints, (2) Kogan's demotion, and (3) the expert's belief that a

---

[9] It is unclear from the record how much time elapsed between Kogan notifying his supervisor about the statement and his reassignment to beach patrol.

[10] In his deposition, Acevedo testified that he did not know Kogan and had not heard about the demotion. Smith, in his deposition, said that demoting Kogan could have sent a subliminal message that the Sheriff's Office did not want officers reporting another officer's use of excessive force.

captain at the Sheriff's Office had testified that he viewed a K-9 as a "weaponless" device.[11]

As we have already explained, in concluding that the Sheriff's Office should have disciplined Wengert, the expert relied on his opinion that the Sheriff's Office should not have trusted the Committee's conclusions, should have independently examined the excessive force allegations, and should have determined based on that independent examination that Wengert was engaging in excessive force. But no evidence supports the expert's belief that the Sheriff's Office had reason to know that its written policies, having been properly followed, led to erroneous results.

Likewise, the expert's conclusion that Kogan's demotion "create[d] a delinquent police subculture of officers who believe they can do what they want to do" was based on that demotion coupled with the Sheriff's Office's decision not to discipline Wengert. But, again, the expert's conclusion that Wengert should have been disciplined was premised on an unsupported belief that the Sheriff's Office

---

[11] The district court concluded that the plaintiffs' expert's opinion — that the Sheriff's Office ratified its officers' excessive force — went to an ultimate issue and did not raise a genuine issue of material fact to overcome summary judgment. The plaintiffs argue that the district court erred in relying on that basis to disregard their expert's testimony. Because we conclude that the expert's testimony failed to raise a genuine issue of material fact, we need not address that argument. See Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1256 (11th Cir. 2001) (noting that we may affirm the district court's grant of summary judgment on any ground that finds support in the record).

should have second-guessed the Committee's conclusions about the excessive force complaints against Wengert.

The plaintiffs' expert also relied on the deposition testimony of a captain employed with the Sheriff's Office. According to the expert, the captain testified that he did not see a K-9 as a weapon, and the expert concluded that "set the tone" in the Sheriff's Office for the belief that using a K-9 was not a use of force. The captain, however never testified that he believed a K-9 was not a weapon. Instead, while reading from an accreditation report's categorization of different uses of force, he explained that a use of force falls within the "weaponless" category if the force is used through a means not specifically listed as its own category. And because use of a K-9 was not listed as a separate category, the captain stated that for purposes of that report, the use of a K-9 would be categorized as a "weaponless" use of force.

The captain was not asked, and there is no evidence showing, whether he believed that the use of a K-9 could be a use of force. No evidence supported the expert's conclusion that the captain "set the tone" in the Sheriff's Office that the use of a K-9 was not a use of force. As a result, the expert's testimony failed to raise a genuine issue of material fact to overcome summary judgment.[12]

---

[12] The plaintiffs also contend that an adverse inference should be drawn from the fact that Wengert invoked his Fifth Amendment right to remain silent in response to some questions asked during his deposition. They argue that Wengert's state of mind about whether he used

The plaintiffs failed to raise a genuine issue of material fact as to their claims against the Sheriff's Office.[13]  The district court did not err in granting summary judgment to the Sheriff's Office on those claims.

**AFFIRMED.**

---

excessive force "can only be learned from Wengert."  But Wengert's subjective belief about whether he used excessive force is irrelevant.  See Johnson v. Breeden, 280 F.3d 1308 ("Fourth Amendment claim[s] of use of excessive force against an arrestee are purely objective.  They turn solely on the objective reasonableness of the amount of force used in the circumstances, regardless of the intent or other subjective state of mind of the defendant officer.").  For that reason, the district court did not err in denying their request that it draw those adverse inferences.

[13] The plaintiffs also contend that "the district court wrongfully ignored evidence of thirty-seven excessive force . . . lawsuits against [the Sheriff's Office] or its officers."  But they never cited in their summary judgment briefing the evidence of those lawsuits, which was in the record attached to a motion to compel.  See Fed. R. Civ. P. 56(c)(3) ("[When addressing a motion for summary judgment], [t]he court need consider only the cited materials . . . .").  Because our review is de novo, we have considered the evidence, which consists only of a list of the names of plaintiffs bringing those lawsuits and a notation that two of those actions resulted in judgments for the plaintiffs.  That evidence, a list of names and an indication that two plaintiffs won favorable judgments, does not raise a genuine issue of material fact about whether the Sheriff's Office had a custom or policy of permitting officers to use excessive force.

13